**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:21-cr-00015-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1.  JOSEPH GAYE**

Defendant.

---

**THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE [ECF 29]**

---

The United States of America, by and through its undersigned Assistant United States Attorney, responds to Joseph Gaye's Motion to Suppress Evidence [ECF 29], and requests the Court deny the motion.

**I.      BACKGROUND**

At approximately 5:30 p.m. on October 19, 2020, Joseph Gaye, a convicted felon, placed a frantic call to 911. Ex. 1[1]. Gaye told the dispatcher that he had been shot by a masked assailant while in his office and required immediate medical attention. *Id*. Gaye also indicated he was located in unit 204 at 199 North Cook Street in Denver, and relayed the code to unlock the door to the building. *Id*. Denver Police Department Corporals Michael Clayborn and Michael Stoney arrived within minutes but were forced to break into the building because the code did not work. Ex. 2[2] and Ex. 3 at T23:40:21-T23:41:28.

---

[1] Exhibit 1 is the 911 recording (INV_461).
[2] Exhibit 2 is the body camera recording from Corporal Clayborn (INV_162). Exhibit 3 is the body camera recording from Corporal Stoney (INV_163). The times cited in the government's response reflect the time in the upper right hand corner of the recordings.

After gaining entry, the officers located unit 204. *Id.* at T23:41:28-T23:42:00. The door to the unit was opened, and Gaye called out to the officers to let them know he was inside. Believing the alleged assailant was still a threat, police announced their arrival before entering and clearing the room. *Id.* at T23:42:00-T23:42:20. After confirming no one else was present, Stoney and Clayborn began rendering aid to Gaye. The officers observed he had been shot in the area around his upper thigh and testicles. *Id.* at T23:42:20-T23:44:39. Emergency Medical Services (EMS) then arrived on scene and took over medical treatment. *Id.* at T23:42:20-T23:44:39. As EMS tended to Gaye, Stoney and Clayborn observed a single shell casing on top of a nearby desk, a bloody chair, and other evidence that a gun was fired inside the unit. *Id.* at T23:47:12-T23:48:28. Police also failed to locate anyone else in the building and did not observe any signs of forced entry. Due to the lack of evidence of a masked assailant, coupled with the location of the shell casing, the bloody chair, and the nature of Gaye's injury, police concluded it was likely Gaye shot himself.

Suspecting Gaye made a false report, police requested a search warrant for unit 204. Ex. 4. The affidavit included officer's observations indicating Gaye made a false report, and requested authorization to search unit 204 for evidence of that offense. The search warrant affidavit was reviewed by a deputy district attorney, and then submitted with the search warrant, which incorporated it by reference. *Id.*

The affidavit was sworn to by Denver Police Department Detective Brian Lang at 9:40 p.m. on October 19, 2020, and was signed by the Honorable Judge Isabel Pallares less than a minute later. *Id.* Police then searched unit 204 and seized bloody clothing and a Luger 9mm shell casing, previously observed by Stoney and Clayborn, which was still on top of the desk. Police also searched the drawers to the desk and discovered one was

2

locked. The drawer was forced open, and a 9mm Sig Sauer semi-automatic firearm with an obliterated serial number along with two boxes of Luger 9mm ammunition were found underneath a document addressed to Gaye. The Sig Sauer was capable of holding twelve rounds in the magazine and one round in the chamber.  But at the time of its discovery, the gun held eleven rounds in the magazine and one in the chamber.

Gaye was rushed to Denver Medical Center and into surgery. During the ensuing operation, the bullet was removed from his body and later turned over to law enforcement. It was submitted to the Denver Crime Laboratory for analysis, and subsequently determined to have been fired from the Sig Sauer recovered from the desk in unit 204.

Gaye was eventually indicted on a single count of possession of a firearm by a felon (18 U.S.C. § 922(g)(1)), and he filed a Motion to Suppress alleging the evidence recovered during investigation was in violation his Fourth Amendment rights because; 1) police were required to leave unit 204 once he was taken to the hospital; 2) the search warrant for unit 204 was unconstitutionally overbroad; 3) police needed a warrant in order to gain possession of the bullet after it was removed from his body. ECF 29.

## II.   **ARGUMENT**

Gaye's motion misses the mark. Law enforcement did not violate the Fourth Amendment where; 1) the emergency exception to the warrant requirement along with Gaye's consent permitted to law enforcement to enter and remain in unit 204; 2) the search warrant reasonably identified the items authorized to be searched for and seized, relating to the offense of making a false report; 3) the recovery of the bullet was not the result of a government action nor does Gaye have standing to challenge any alleged seizure. Thus, his Motion to Suppress Evidence must be denied.

A.  *Corporal Clayborn's observations in unit 204 were lawful based upon Gaye's implied consent and the emergency exception to the warrant requirement,*

Gaye concedes that law enforcement's entry into unit 204 was appropriate under the emergency exception to the warrant requirement. ECF 29 ¶ 9. He contends that Corporal Clayborn's observations of the shell casing and bloody chair, exceeded the scope of the exception because they were made after Gaye had been taken out of the unit. *Id.* But Gaye's argument is based upon a faulty premise, because Gaye was still in the unit when Clayborn made the observations at issue. Ex. 2 at T23:47:12-T23:48:28. Furthermore, even if Gaye had been removed, Clayborn's presence was still legally permissible under both the emergency exception and pursuant to Gaye's consent.

1.  *Corporal Clayborn's observations were made pursuant to Gaye's consent to search the unit*

A warrantless search can be valid "with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (citations omitted). The standard for measuring the scope of an individual's consent is "objective reasonableness," or more plainly, "what would the typical reasonable person have understood by the exchange between the officer and the [person giving consent]?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Here, Gaye summoned emergency personnel to his property by alleging a masked intruder had shot him and was still at-large. Ex. 1. At no time did Gaye tell police this report was a lie, or that they could not investigate the alleged assault. Under these circumstances, it was entirely reasonable for police to believe Gaye consented to an investigation into who shot him, which included a search for evidence within unit 204.

2. *Corporal Clayborn's observations were made within the scope of the emergency exception to the warrant requirement*

"[W]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394 (1978). One type of exigent circumstance is the emergency aid exception, also referred to as an exception based on "the risk of personal injury," which requires that "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *United States v. Najar,* 451 F.3d 710, 718 (10th Cir. 2006). As noted, Gaye concedes the initial entry to unit 204 was proper under the circumstances. ECF 29 ¶ 9. Thus, the only issue is whether Corporal Clayborn's actions were reasonable. Based upon the evidence, his actions plainly were.

Clayborn's observations of the unit were brief. They were also limited to items within a few feet of where Gaye was found shot, relating to the investigation of the alleged assault. *See Najar*, 451 F.3d at 720 (10th Cir. 2006) (holding an officer's search under the emergency exception was reasonable in manner and scope where it was "confined… to only those places inside the home where an emergency would reasonably be associated").

Accordingly, Corporal Clayborn's actions were proper under the emergency exception to the warrant requirement.

3. *Corporal Clayborn's observations were of items in plain view*

"The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification

and who has probable cause to suspect that the item is connected with criminal activity."
*Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (citation omitted). The doctrine "is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." *Id.*; *see also  Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home ... is not ... subject [to Fourth Amendment] protection.").

Having established Corporal Clayborn's presence in unit 204 was permitted by Gaye's consent and the emergency doctrine, his observations of the shell casing and bloody chair must also be deemed lawful. In fact, Clayborn could have done more than just observe the evidence at the time, he could have seized the items because they related to the shooting. *Andreas*, 463 U.S. at 771.

Therefore, because Corporal Clayborn's observations were made while he was lawfully present in unit 204 under the emergency exception and Gaye's consent, there was no Fourth Amendment violation, and Gaye's argument fails.

B. _The search warrant was not unconstitutionally overbroad_

"When interpreting warrants, [the Tenth Circuit] has adopted a standard of practical accuracy rather than technical precision." *United States v. Ortega-Jimenez*, 232 F.3d 1325, 1328 (10th Cir. 2000) (internal quotations omitted). "The particularity requirement is satisfied when the description of an item to be searched for and seized pursuant to a warrant enables the searcher to reasonably ascertain and identify the things authorized to be seized. Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Sells*, 463 F.3d 1148,

6

1154 (10th Cir. 2006) (quoting *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988).

Gaye contends the search warrant obtained in this case was unconstitutionally broad because it did not list a criminal statute and authorized the search and seizure for evidence of any crime. ECF 29 ¶ ¶ 10-7. In support, he attempts to analogize the warrant in this case to the warrant in *Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009). But his argument is without merit.

In *Cassady*, the court determined a search warrant was unconstitutionally overbroad because it contained a provision that effectively authorized police to search for all evidence of criminal activity, without limitation. *Cassady*, 567 F.3d at 635. No general search authorization is present here. Unlike *Cassady*, the search warrant materials[3] in the current case only authorized police to look for evidence of false reporting to authorities (C.R.S. § 18-8-111).  Although a statutory citation was not included, it was not necessary in light of the description of the offense in the search warrant affidavit. *See United States v. Le*, 173 F.3d 1258, 1274 (10th Cir. 1999) (holding that a citation to a criminal statute is not necessary when the search warrant includes a description of the suspected criminal activity that is specific enough to give the executing officers adequate guidance in order to distinguish between items that may and may not be seized). As such, the warrant was not overbroad, and Gaye's argument fails.

---

[3] Since Gaye concedes the affidavit was incorporated by reference in the warrant, and the evidence shows the affidavit was also attached to the warrant, it may be considered as part of the search warrant for the purposes of this analysis. *United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988).

C. *The good-faith doctrine applies*

Even if the government's primary argument regarding the search warrant does not prevail, the good-faith doctrine prevents the exclusion of the evidence. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as [the Supreme Court has] sometimes put it, in 'objective good-faith.' " *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). "[I]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id*. (internal quotations omitted).

Here, the officers acted in objective good-faith reliance on a search warrant reviewed by a deputy district attorney, and signed by a judge. Moreover, the affiant of the search warrant, Detective Lang, was present for the search warrant's execution, and the resulting seizures were limited to items related to the subject offense. *See, e.g., United States v. Guidry*, 199 F.3d 1150, 1155 (10th Cir. 1999) (applying good-faith exception where the agent executing the warrant and was involved in the investigation although he was not the affiant on the warrant).

Therefore, the good-faith doctrine prevents exclusion of the evidence, even if the search warrant was defective.

D. *The recovery of the bullet did not violate Gaye's Fourth Amendment rights because it was not the result of a government action and he otherwise lacks standing to contest its seizure*

Gaye also suggests that hospital staff could not supply law enforcement with the

bullet they removed from his body without a warrant. ECF 29 ¶ 18. However, his argument fails to consider the government was not involved in the allegedly illicit seizure and that he lacks standing to challenge law enforcement's actions.

### 1. The recovery of the bullet was not the result of a government action

The constitutional protections under the Fourth Amendment are triggered only when government action is involved in the search or seizure. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Fourth Amendment is not applicable " 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " *Jacobsen*, 466 U.S. at 113–114 (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980).

In this case, Gaye requested emergency assistance after being shot and was rushed to Denver Medical Center for surgery. During the operation, hospital staff removed a bullet from his body, and it was eventually given to law enforcement. Gaye does not argue that the removal of the bullet was done for anything other than a legitimate medical purpose. Nor does Gaye contend Denver Medical Center is a government-owned hospital or that its staff were acting as governmental agents.

Thus, the Fourth Amendment's protections cannot apply to the circumstances here, because the recovery of the bullet was not instigated by the government, but by private actors.

### 2. Gaye has no standing to challenge the seizure

In the alternative, even if this Court finds a search and seizure implicating the Fourth Amendment did occur, Gaye cannot establish standing to challenge law enforcement's conduct. A defendant has standing to challenge a search only if (1) "the

defendant manifested a subjective expectation of privacy in the area searched," and (2) "society would recognize that expectation as objectively reasonable." *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990). If an inspection by police "does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause." *Andreas*, 463 U.S. 765 at 771.

When Gaye summoned emergency personnel to take him to the hospital as an alleged victim of a shooting, he consented to the removal of the bullet from his body. Although he may not have intended for hospital staff to ultimately turn the bullet over to police, he voluntarily gave staff the ability to do so. Further, given his allegation that a masked assailant was responsible for his injuries, the nature of his interaction with staff hardly supports any "reasonable inference" that Gaye "took normal precautions to maintain his privacy." *Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980).

Therefore, Gaye has no standing to challenge law enforcement's recovery of the bullet.

III.     **CONCLUSION**

Therefore, based upon the above arguments, Gaye's Motion to Suppress Evidence [ECF 29] should be denied.

Dated:  September 9, 2021

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:      *s/ Thomas Minser*
THOMAS MINSER
Assistant United States Attorney
1801 California St., Suite 1600
Denver, Colorado 80202
Phone:  (303) 454-0203
Fax:  (303) 454-0405
E-mail: Thomas.Minser@usdoj.gov
Attorney for the United States

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

<div style="margin-left: 40%;">

*s/Portia Peter*
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Email: Portia.peter@usdoj.gov

</div>