IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action Number 21-cr-15-WJM

---

UNTITED STATES OF AMERICA,

      Plaintiff,

vs.

JOSEPH GAYE,

      Defendant,

---

**REPLY REGARDING MOTION TO SUPPRESS EVIDENCE**

---

The Assistant United States Attorney makes several arguments against Mr. Gaye's motions to suppress the evidence from 199 North Cook Street, Denver CO on October 19, 2020. The Government argues the emergency exception and Mr. Gaye's alleged consent authorized the search by Corporal Clayborn; the search warrant was not unconstitutionally overbroad and if it was the good faith exception applied, and finally that Mr. Gaye does not have standing to contest the seizing of the bullet from the hospital. Mr. Gaye responds to each of these arguments as follows:

Search by Corporal Clayborn

CONSENT

The Government argues that Corporal Clayborn's search of 199 North Cook Street was permissible based upon Mr. Gaye's implied consent. "Before a district court may admit evidence resulting from a consent search, it must determine from the totality of circumstances that (1) the defendant's consent was voluntary and (2) the search did not exceed the scope of the consent." United States v. Price, 925 F.2d 1268 (10th Cir.1991).

In this case Mr. Gaye never consented to law enforcement conducting a search of 199 North Cook Street, implied or otherwise.  Since a consent search is the exceptions to the Fourth Amendment's general requirement of a search warrant, it is the Government's burden to prove the Mr. Gaye's consent.   The Government "must demonstrate with clear and positive testimony that consent was unequivocal and specific and freely and intelligently given."  United States v. Dewitt, 946 F.2d 1497, 1500 (10th Cir. 1991).

In the matter before the Court, the statements of Mr. Gaye on the 911 tape, demonstrate neither unequivocal nor specific intent to allow law enforcement to search the premise.  Mr. Gaye is requesting paramedics respond to his residence, not law enforcement.  Mr. Gaye does not request anyone to investigate the alleged shooting.  Mr. Gaye is never asked for permission for law enforcement to investigate the shooting.  Further, during both the 911 call and the subsequent interactions with law enforcement, Mr. Gaye was in extreme pain and in danger of bleeding to death.  The Government's argument would lead to the conclusion that anyone who calls for emergency aid in consenting to a search by law enforcement.  A choice to bleed to death or allow law enforcement to search is the antithesis of "freely and intelligently" given.

EMERGENCY EXCEPTION

"The right of people to be secure in their persons and homes against unreasonable searches and seizures is guaranteed by the Fourth Amendment. Thus, warrants are generally

required to search a person's home or his person.  It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. An exception to the warrant requirement exists, however, when the exigencies [in a situation] ... make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. This exception ömust be strictly circumscribed by the exigencies.ö  United States v. Porter, 594 F.3d 1251, 1255 (10th Cir. 2010)(internal quotes omitted).  While Mr. Gaye concedes the officers initial entry to his residence was authorized by the emergency exemption; Exhibit 2, submitted by the Government, clearly shows the shell casing, bloody chair, and other observations were discovered after the circumstances permitting the exception had expired.

Viewing Exhibit 2 in its entirety demonstrates the emergency exception expired and Corporal Clayborn moved from responding to an emergency to investigating a crime.  Initially the all the officer were concerned with locating Mr. Gaye and securing the scene.  However, at around T23:45:00(Exhibit 2), the EMTøs take over the emergency situation and law enforcement begin their search.  The emergency exception does not allow law enforcement to abandon the warrant requirement ömerely to make law enforcement more efficient, to safeguard evidence that could be protected in another manner, or simply because a serious crime has been committed.ö United States v. Porter, 594 F.3d 1251, 1255 (10th Cir. 2010).  Since the shell casing and bloody chair were not observed until after the emergency exception had expired the plain view doctrine does not apply.

GENERAL WARRANT

Even when law enforcement secures a search warrant, that warrant must limit öthose searches deemed necessary should be as limited as possible.ö Coolidge v. New Hampshire, 403

U.S. 443, 467 (1971). The Tenth Circuit has explained that **"**the Fourth Amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.**"** Cassady v. Goering, 567 F.3d 628, 635 (10th Cir. 2009).

The particularity requirement prevents general searches and strictly limits the discretion of the officer executing the warrant. See Voss v. Bergsgaard, 774 F.2d 402, 404 (10th Cir. 1985). "The particularity requirement ensures that a search is confined in scope to particularly described evidence **relating to a specific crime** for which there is demonstrated probable cause." United States v. Janus Indus., 48 F.3d 1548, 1553 (10th Cir. 1995). "Nothing is left to the discretion of the officer executing the warrant." Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965).

There is nothing in either the search warrant or in the accompanying affidavit that identifies the specific crime that is being investigated. (Exhibit 4). The Government seemingly pulls a statute out of thin air to justify the warrant. In the affidavit, Detective Lang goes to great lengths to describe his qualifications as a major crime detective assigned to the Firearm Assault Shoot Team. It is silly to imagine this major crime detective is rushing a search warrant to a judge at 9:40 PM for the purposes of investigation a class three misdemeanor. Further Detective Lang asks to search for "evidence tending to establish the motive or identity of the suspect or witness." This statement clearly shows Detective Lang is not sure what crime he is investigating. The Detective also states he is looking for "additional evidence that may be present but not readily visible in order to further this investigation."(Exhibit 4). This is clearly a request for precisely the general rummaging the particularity requirement was designed to prevent. What

Detective Lang was investigating or searching for is left to the imagination of the judge and the officers executing the warrant.

Failing to identify the specific crime is damning in a Search Warrant like the one in question.  The above language, cited in the affidavit and incorporated by the Search warrant, clearly transform the warrant into a general warrant.  The judge has authorized a search for any "item that may be present but not readily visible in order to further the investigation."  With no limitation on what Detective Lang is investigating there can be no limit on what may be searched for.  Even the search warrant itself allows the seizure of "Any material evidence developed by a through crime scene investigation"  tending to establish the motive or identity of any suspect or witness."  This is cart blanch for a general rummaging of 199 North Cook Street.

The warrant in question is clearly a general warrant. While the "good faith" exception may sometimes save an overbroad warrant, all evidence seized pursuant to a general warrant must be suppressed.  "It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed." United States v. Christine, 687 F.2d 749, 758 (3d Cir. 1982)(cited with approval in United States v. Leary, 846 F.2d 592, 609 (10th Cir. 1988).  Mr. Gaye would also argue that since Detective Lang was aware Judge Pallares took less than a minute to review and sign the warrant, he was on notice he could not rely on a neutral and detached magistrate preforming their duty.  Further the seizure of Mr. Gaye's laptop computer argues against the good faith exception.  There is nothing in the Affidavit which could possibly be argued as supporting probable cause for the laptop computer.  Its inclusion in the warrant and subsequent seizure is evidence Detective Lang was on and aware the search a general fishing expedition in violation of the Fourth Amendment.

SEIZURE OF BULLET

While defense counsel has been unable to find a case from the 10th Circuit on point, he would point the court to <u>United States v. Neely</u>, 345 F.3d 366, 368 (5th Cir. 2003).  The case involves the seizure of bloody clothing by police from the hospital.  Neely was in surgery after being shot during a bank robbery.  Law enforcement was dispatched to the hospital to retrieve his clothing.  The officer had no warrant for the clothing.  Medical personnel gave the officer Neely's clothes upon the request.  The clothes revealed the presence of a dye pack form the robbery.  <u>United States v. Neely</u>, 345 F.3d 366, 368 (5th Cir. 2003).

In holding a violation of the Fourth Amendment, the court focused on the possessory interest of Mr. Neely and the clothing.  The Court found the seizure violated the Fourth Amendment regardless of whether Mr. Neely maintained a reasonable expectation of privacy at the hospital.  "We adopt this reasoning, and hold that Neely did not forfeit his possessory interest in his clothing by entering The Med and that the officers presumptively violated his Fourth Amendment rights in retrieving the clothes from the hospital." <u>United States v. Neely</u>, 345 F.3d 366, 370 (5th Cir. 2003).

Mr. Gaye would ask this Court to adopt the reasoning of <u>United States v. Neely</u>, 345 F.3d 366, 370 (5th Cir. 2003), and hold the seizure of his bullet from the hospital violated the Fourth Amendment.

BARKER & TOLINI, P.C.


___s\ Joshua Tolini_____
Joshua N. Tolini, No. 30119
720 S. Tejon
Colorado Springs, Colorado 80903
(719) 227-0230
(719) 227-0964 Fax


## CERTIFICATE OF MAIILING

I hereby certify that a copy of the foregoing was filed using the courtøs ECF system on September 24, 2021


_s/ Joshua Tolini