IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  1:21-cr-00015-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  JOSEPH GAYE,

    Defendant.
_____

**THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S POST-VERDICT
MOTION FOR JUDGEMENT OF ACQUITTAL [ECF 88]**
_____

    The United States of America, by and through its undersigned Assistant United States Attorney, hereby submits its response to Joseph Gaye's post-verdict motion for judgement of acquittal pursuant Rule 29 of the Federal Rules of Criminal Procedure. ECF 88. Gaye argues that the government failed to prove the element of knowing possession of a firearm in the case. That argument is contrary to the evidence, especially when the evidence is viewed in the light most favorable to the government. Accordingly, the Court should deny the motion.[1]

**I.   Authority**

    In addressing challenges to the sufficiency of the evidence, courts "consider only whether taking the evidence-both direct and circumstantial, together with the reasonable inferences to be drawn therefrom-in the light most favorable to the

---

[1] The only issue in the motion for acquittal is whether Gaye knowingly possessed the firearm because, at trial, the parties stipulated to the remaining elements of 18 U.S.C. § 922(g)(1).

1

government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Isaac-Sigala*, 448 F.3d 1206, 1210 (10th Cir. 2006) (internal quotations omitted). Courts "do not weigh conflicting evidence or consider witness credibility, and the fact that prosecution and defense witnesses presented conflicting or differing accounts at trial does not necessarily render the evidence insufficient." *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011) (internal citations omitted).

Reversal of a conviction is only appropriate if "no reasonable juror could have reached the disputed verdict." *Isaac-Sigala*, 448 F.3d at 1210 (internal quotations omitted).  Indeed, the evidence required to support a verdict "need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.  Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt." *Id.* (internal quotations omitted).

## II.    Analysis

Gaye argues the evidence in this case did not prove he actually or constructively possessed a firearm. However, when the evidence is viewed in the light most favorable to the government, the recordings from body worn cameras, photographs, and testimony from witnesses, established his guilt.

### A. Evidence from Trial

At approximately 5:33 p.m. on October 19, 2020, Joseph Gaye called 911 and reported that a masked assailant had shot him. Members of the Denver Police Department responded to the call within minutes, but had difficulty entering the locked office building where Gaye was located. After several fruitless attempts to gain access

with a keycode, police ultimately used a baton to break the building's glass door to enter.

Gaye was located in an office suite he had rented since 2016. He was laying on the floor next to his desk and bleeding profusely from his groin area. There was also blood on the seat of his office chair and the floor near his desk. When a police officer began treating Gaye's injury, he observed a single gunshot wound where the bullet went through his scrotum at close range before entering his upper left leg. Gaye did not give any details of the alleged masked assailant to police, and he was taken by paramedics for emergency treatment. At the hospital, the bullet was removed from his person and then recovered by law enforcement a few days later.

At the same time Gaye was being treated in his office, other officers on scene attempted to locate the alleged masked assailant. However, there were no other individuals in the building and no signs of forced entry. Suspecting there was no masked assailant and that Gaye had shot himself, police obtained a search warrant for his office. During the subsequent search, police discovered a spent shell casing on top of Gaye's desk, along with an open Bud Light Michelada can. Police also discovered one of the desk's drawers was locked, and after forcing the drawer open, they found two additional cans of Bud Light Michelada, personal items, along with mail addressed to Gaye. And when police looked underneath Gaye's mail, they located a Sig Sauer semi-automatic 9mm pistol with an obliterated serial number and two boxes of 9mm ammunition. The Sig Sauer was capable of holding twelve rounds in its magazine and one round in the chamber. But at the time of its discovery, it was loaded with only eleven rounds in the magazine and one round in the chamber. Moreover, the rounds of

ammunition inside of the firearm, were the same brand and caliber as the rounds inside the two ammunition boxes.

The Sig Sauer, the shell casing, and the bullet recovered from Gaye's person at the hospital, were submitted to the Denver Police Crime Laboratory. A firearm-toolmark analysis was conducted, which revealed the Sig Sauer created unique toolmarks that were present on the shell casing and bullet. Thus, it was determined the bullet recovered from Gaye's person and the shell casing discovered on his desk had been fired from the Sig Sauer.

### B. Sufficiency of the Evidence

As the jury instructions explained, actual possession occurs when a person knowingly has direct control over an object or thing, at a given time. A person who, although not in actual possession, knowingly has the power and intent at a given time to exercise dominion and control over an object, either directly or through another person or persons, is then in constructive possession of it. *See* ECF 87.

Here, the Sig Sauer semi-automatic 9mm pistol with an obliterated serial number was discovered alongside two boxes of 9mm ammunition inside a locked drawer of a desk belonging Gaye. The firearm and boxes of ammunition were hidden underneath multiple pieces of mail addressed to Gaye, and the desk itself was located within an office suite that Gaye had been renting since 2016. Gaye's exclusive control over the office and desk, in and of itself, was sufficient to prove him guilty. *See United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000) ("In most cases, the defendant's dominion, control, and knowledge may be inferred if he has exclusive possession of the premises on which the object was found."); *see also United States v. Little*, 829

4

F.3d 1177, 1183 (10th Cir. 2016) (holding "[w]hen a gun is found in a defendant's bedroom … it would not be improper for the jury to infer that the defendant had both knowledge of the firearm and an intent to exercise dominion and control over it merely from its presence in the bedroom."). But as noted above, that the government also presented significant evidence Gaye shot himself with the Sig Sauer, which also proved his knowing possession of the firearm.

In his motion for acquittal, Gaye essentially repeats the argument he made at trial. Namely, he claims there is no evidence linking him to the firearm found in his desk, and blames its presence on a masked assailant. ECF 88. His argument is not only legally insufficient but relies upon an incomplete assessment of the facts.

With regard to the legal standard, Gaye claims his motion should be granted because the evidence at trial "raised the real possibility" he did not knowingly and intentionally possess the firearm. ECF 88 at 3. But even assuming Gaye's interpretation of the evidence is accurate, to succeed at this stage he must show the evidence he "committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Fuller*, 751 F.3d 1150, 1153 (10th Cir. 2014) (citation omitted). Although evidence may "raise[] the real possibility" of innocence, such a conclusion does not mean evidence of guilt was "nonexistent." *Id*. Because contrary to Gaye's position, the evidence required to support a verdict "need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *Isaac-Sigala*, 448 F.3d at 1210.

Furthermore, the evidence he claims supports a reversal of the verdict leaves out important context. For instance, although there was no blood found on the gun or

5

other items in the locked drawer, there was a significant amount of his blood on the ground immediately adjacent to the locked drawer. As for the lack of fingerprints on the firearm, a forensic scientist from the Denver Police Crime Laboratory explained why that is not unusual due to the nature of a gun's surface. The failure to find a key to the locked drawer was similarly addressed, as law enforcement officers explained that due to the clutter, there were likely a number of unsearched locations within Gaye's office that could have held the key. Finally, the use of Gaye's access code prior to the 911 call was additional evidence that Gaye shot himself, because there was no indication anyone other than Gaye accessed the building with the code and, further, the property manager noted that tenants were advised not to give their code to others.

### III.   Conclusion

Because a reasonable jury could find Gaye guilty beyond a reasonable doubt taking the evidence in the light most favorable to the government, his motion should be denied.

Dated:   December 5, 2022

          Respectfully submitted,

          COLE FINEGAN
          United States Attorney

By:   /s/ *Thomas Minser*
     THOMAS MINSER
     Assistant United States Attorney
     1801 California St., Suite 1600
     Denver, Colorado 80202
     Phone:  (303) 454-0203
     Fax:  (303) 454-0405
     E-mail: Thomas.Minser@usdoj.gov
     Attorney for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2022, I electronically filed the foregoing **THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S POST-VERDICT MOTION FOR JUDGEMENT OF ACQUITTAL [ECF 88]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

By: *s/ Deana Ambrosen*
Legal Assistant
United States Attorney's Office